**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

**JIMMY R. FISHER,**

      **Plaintiff,**

**v.**                                  **Case No. 10-4102-DJW**

**THE UNIVERSITY OF KANSAS
FACILITIES OPERATIONS,**

      **Defendant.**

<u>**MEMORANDUM AND ORDER**</u>

Plaintiff Jimmy R. Fisher, proceeding *pro se*, brings this lawsuit against his former employer, the University of Kansas Facilities Operations, alleging race discrimination, racial harassment, and retaliation in violation of the Title VII of the Civil Rights Act of 1964.[1]  This matter is before the Court on Defendant's Motion for Summary Judgment (ECF No. 16).  As explained in more detail below, the Court finds that Plaintiff's racial harassment claim does not fall within the scope of his administrative complaint filed with the Kansas Human Rights Commission ("KHRC") and was therefore not administratively exhausted. The Court further finds that Plaintiff's two written reprimands and negative progress report do not constitute an adverse employment action sufficient to state a claim for race discrimination.  Finally, Plaintiff has failed to show that he engaged in protected opposition to discrimination preceding the claimed retaliatory actions by his employer on his retaliation claim.  Accordingly, the Court grants summary judgment on all claims in favor of Defendant.

---

[1]42 U.S.C. § 2000e *et seq.*

## I.      Material Facts

As a preliminary matter, the Court notes that Plaintiff's response brief fails to adequately respond to, much less controvert, many of Defendant's statements of undisputed material facts.[2] Plaintiff simply sets forth his own statement of undisputed material facts, most of which contain no citation to the record.  D. Kan. Rule 56.1 requires that "[e]ach fact in dispute shall be numbered by paragraph, shall refer with particularity to those portions of the record upon which the opposing party relies and, if applicable, shall state the number of the movant's fact that is disputed."  Plaintiff fails to comply with these requirements.  Thus, where allegedly disputed facts are not directly controverted by evidence contained in the record, the Court considers those facts uncontroverted under Federal Rule of Civil Procedure 56.  As Plaintiff is proceeding *pro se*, the Court must construe his pleadings more liberally and hold it to a less stringent standard than formal pleadings or papers drafted by lawyers.[3]  The Court will therefore deem Defendant's facts controverted to the extent that Plaintiff's own statements of undisputed facts fairly meet the substance of Defendant's statement of facts and are supported by competent evidence.

Plaintiff is African-American and was employed by the University of Kansas beginning on July 15, 2007, as a Maintenance/Service Worker-Custodial working in the University's Facilities Operations Custodial Services Department.

---

[2]In its reply, Defendant asks the Court to strike and disregard Plaintiff's September 12, 2011 response as untimely filed.  Plaintiff claims that he did not receive a copy until August 24, 2011, which the Court finds reasonable given that Defendant's motion was filed at 9:31 p.m. on Friday, August 19, 2011 and served on Plaintiff by mail.  The Court will therefore excuse Plaintiff's filing his response late by one business day.

[3]*Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)).

In March 2008, Plaintiff was working in the Malott building.  His supervisor at that time was Robert Osburn.  In a Quality Assurance Program report dated "5/08," Plaintiff's supervisor checked satisfactory in all the areas to be cleaned by Plaintiff and wrote "good job!" on the report.

Around October 2008, Plaintiff was assigned to work in the Wescoe building.  In his Quality Assurance Report dated October 12, 2008, his supervisor, Linda Otlinger, checked his cleaning of four areas as unsatisfactory.  She wrote "[a]fter inspecting your areas, I would like to help by retraining you on Wescoe's RRs, and classrooms to help, with time management and efficiency, will improve."  On his October 22, 2008 report, she only checked one area as unsatisfactory and commented, "[y]our area is improving.  Thank you for your efforts.  Keep up the good work."  In his October 28, 2008 report, his supervisor checked three areas as unsatisfactory.

In December 2008, Plaintiff was assigned to work at Robinson Gymnasium.  Plaintiff's immediate supervisor was Vicki Topolewski Osburn.  She is a custodial supervisor in the University's Facilities Operations Custodial Services Department.

On December 12, 2008, Ms. Osburn issued a written reprimand to Plaintiff concerning an incident that occurred on December 9, 2008, in which Plaintiff failed to perform his assigned duties of assisting another employee on "project night."  In the December 12 "Note for File," Ms. Osburn informed Plaintiff that he was not being a team player and needed to follow instructions.  The Note further stated "[i]f this continues to be a problem you will face further discipline."

On December 23, 2008, Ms. Osburn provided Plaintiff with his annual evaluation for the period January 15, 2008 through December 31, 2008.  In that evaluation, Plaintiff was rated overall as "Meets Expectations" and was rated "Meets Expectations" in four of the five categories evaluated.  Under "Quantity of Work," Ms. Osburn stated that: "[Plaintiff] does what needs to be

3

done.  He works at a slow steady pace.  I would like to see [him] speed up the pace so he can do extra projects or help in other areas if needed."  Under Quality of Work, Ms. Osburn rated Plaintiff's work as "Meets Expectations" and commented that "[o]verall [Plaintiff] does a good job.  He needs to pay more attention to the small details in his area."  In the Working Relationships with Co-Workers, Ms. Osburn gave Plaintiff an "Unsatisfactory" rating and commented:

> [Plaintiff] gets along well with fellow custodians.  He needs to work at getting along with his supervisors.  He needs to be less argumentative and ask questions without talking down to his supervisors.  When corrected if he misses something in his area he needs to discuss it without being defensive. [Plaintiff] needs to become more of a team player.  When there are group projects that need to be done he needs to pitch in and do his fair share of the work.  When emergencies arise he needs to stay until the job is finished.

In December 2008, April Blasingame, one of Plaintiff's coworkers, reported that Plaintiff had approached her and given her a note asking for her phone number so that they could meet outside work.  After she ignored his request, he again approached her and asked her what she was paranoid about and if the note scared her.  She reported the incident as possible sexual harassment.  On December 24, 2008, Steve Ramirez, Defendant's Equal Opportunity Specialist/ADA and Title IX Coordinator, conducted an investigation.  When he interviewed Plaintiff on December 29, 2008, Plaintiff told Mr. Ramirez that he felt he was being discriminated against based on his race.  In response to this statement, Mr. Ramirez asked Plaintiff to provide him with specific examples of how he had been discriminated against.  Plaintiff told Mr. Ramirez that he had his allegations documented, but that he wanted to provide Mr. Ramirez with a typed complaint. Mr. Ramirez responded that he would accept the complaint when Plaintiff was ready to provide specific examples.   On February 6, 2009, Mr. Ramirez issued a written report of his investigation into the allegations of sexual harassment against Plaintiff.  In that report, Mr. Ramirez concluded that

4

Plaintiff had engaged in inappropriate and unwelcome behavior toward a female co-worker, and he recommended that Plaintiff be disciplined.  On February 9, 2009, Mr. Ramirez informed Plaintiff that he found Plaintiff had engaged in inappropriate and unwelcome behavior toward a female co-worker and that he recommended Plaintiff be disciplined for such conduct.

On March 19, 2009, Plaintiff was given a second written reprimand for not following directions.  Plaintiff's supervisor, Ms. Osburn, described in the "Note for File" three instances where Plaintiff had not followed her instructions.  The Note further stated that Plaintiff's conduct was unacceptable and if it continued to be a problem, "discipline could occur up to and including suspension or dismissal."

On March 25, 2009, Ms. Osburn provided Plaintiff with a progress report in which she reported that Plaintiff's attitude had started to slip back to an unacceptable level, he was not following instructions, he had slowed down getting his work done, and his attendance had become a problem with two separate instances of sick calls in a thirty-day period.  Nonetheless, the progress report noted that "overall his area is acceptable," and concluded with the following statement:

> Jimmy needs to follow instructions. Jimmy needs to get his scheduled area done in a timely manner. Jimmy needs to improve his attendance. Jimmy needs to do project work that does not include his regular scheduled duties on the 3 nights a week he does not have to pull office trash. Jimmy needs to work on improving his attitude. He was headed in the right direction up until last week and has started to regress.

On April 14, 2009, Plaintiff telephoned Mr. Ramirez to inquire about his complaint regarding racial discrimination. Mr. Ramirez reminded Plaintiff that in the December 29, 2008 meeting Plaintiff had told Mr. Ramirez that he would provide written documentation concerning his complaint but he had not done so. Plaintiff stated he would provide Mr. Ramirez written documentation of his complaint.

On April 21, 2009, Plaintiff left Mr. Ramirez a voicemail message that he wanted to bring his written documentation concerning his complaint of race discrimination to Mr. Ramirez on April 22, 2009.   On April 22, 2009, Plaintiff said he would bring his written documentation of his complaint to Mr. Ramirez on April 23, 2009.   Plaintiff provided a written statement of his allegations of discrimination to Mr. Ramirez on April 23, 2009.

On May 4, 2009, Plaintiff filed a complaint with the Kansas Human Rights Commission against Defendant alleging race discrimination and retaliation.

Mr. Ramirez conducted an investigation into Plaintiff's complaint alleging racial discrimination, and on June 22, 2009, Mr. Ramirez wrote Plaintiff advising him that his investigation had found insufficient information to substantiate Plaintiff's discrimination complaint.

Defendant terminated Plaintiff's employment effective August 21, 2009.   Plaintiff did not appeal the termination of his employment to Defendant's disciplinary action hearing board.

## II.   Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine dispute as to any material fact" and that it "is entitled to judgment as a matter of law."[4]   In applying this standard, the court views the evidence and all reasonable inferences drawn from the evidence in the light most favorable to the nonmoving party.[5]   "An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[6]   "An issue

---

[4]Fed. R. Civ. P. 56(a).

[5]*Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[6]*Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim."[7]

When examining the underlying facts of the case, the Court is cognizant that all inferences must be viewed in the light most favorable to the nonmoving party[8] and that it may not make credibility determinations or weigh the evidence.[9]

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law.[10]   In attempting to meet that standard, a moving party that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the moving party need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim.[11]   In such cases, "[t]he moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."[12]

If the moving party carries this initial burden, then the nonmovant that would bear the burden of persuasion at trial may not simply "rest upon his or her pleadings, but must bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which he or she carries the

---

[7]*Id.* (citing *Anderson*, 477 U.S. at 248).

[8]*Matsushita*, 475 U.S. at 587.

[9]*Utah Lighthouse Ministry v. Found. for Apologetic Info. & Research*, 527 F.3d 1045, 1050 (10th Cir. 2008) (citations omitted).

[10]*Matsushita*, 475 U.S. at 587 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

[11]*Id.* (citing *Celotex*, 477 U.S. at 325).

[12]*Celotex*, 477 U.S. at 323.

burden of proof."[13]  To accomplish this, sufficient evidence pertinent to the material issue must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein.[14]  Finally, the Court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[15]

## III.    Title VII Racial Harassment Claim

### A.    Plaintiff's Claim for Racial Harassment Is Not Within the Scope of His KHRC Complaint and, Therefore, Was Not Administratively Exhausted

Defendant asserts that Plaintiff's Complaint should be partially dismissed and narrowly construed based upon his failure to exhaust his administrative remedies.  It points out that a comparison of Plaintiff's Complaint with his administrative complaint filed with the KHRC shows that his Complaint contains claims not raised in his administrative complaint. Specifically, Defendant argues that Plaintiff's administrative complaint makes no mention of harassment and thus this claim should be dismissed because it has not been administratively exhausted.

A plaintiff is required to exhaust his administrative remedies before filing a Title VII action.[16] This requirement remedies serves two purposes:  to give notice of the alleged violation to the charged party, and to give the EEOC or KHRC an opportunity to conciliate the claim, which

---

[13]*Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005).

[14]*Diaz v. Paul J. Kennedy Law Firm*, 289 F.3d 671, 675 (10th Cir. 2002) (citations and quotations omitted).

[15]*Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1) (quotations omitted).

[16]*See Shikles v. Sprint/United Mgmt. Co.*, 426 F.3d 1304, 1317 (10th Cir. 2005) ("It is well-established that Title VII requires a plaintiff to exhaust his or her administrative remedies before filing suit." (citations omitted)).

effectuates Title VII's goal of securing voluntary compliance.[17]  If a complaint were allowed to encompass allegations outside the ambit of the predicate charge, this would circumvent the administrative agency's investigatory and conciliatory role and deprive the charged party of notice of the charge.[18]  The burden is on the plaintiff, as the party seeking federal jurisdiction, to show by competent evidence that he exhausted his administrative remedies before filing the action.[19]

A plaintiff's claim in federal court is generally limited by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC or state deferral agency, such as the KHRC.[20]  In other words, the charge must contain facts concerning the discriminatory and retaliatory actions underlying each claim; this follows from the rule that each discrete incident of alleged discrimination constitutes its own unlawful employment practice for which administrative remedies must be exhausted.[21]  Courts liberally construe charges filed with the EEOC and state deferral agencies in determining whether administrative remedies have been exhausted as to a particular claim.[22]

When an employee seeks relief for incidents not listed in the original charge to the EEOC, the complaint nevertheless may encompass any discrimination like or reasonably related to the allegations in the charge, including new acts occurring during the pendency of the charge before the

---

[17]*Pritchett v. Western Res., Inc.*, 313 F. Supp. 2d 1120, 1127 (D. Kan. 2004).

[18]*Id.*

[19]*McBride v. CITGO Petroleum Corp.*, 281 F.3d 1099, 1106 (10th Cir. 2002) (internal quotations and citations omitted).

[20]*Jones v. United Parcel Serv., Inc.*, 502 F.3d 1176, 1186 (10th Cir. 2007).

[21]*Id.*

[22]*Id.*

EEOC.[23]  A claim is considered "reasonably related" when "the conduct complained of would fall within the scope of the administrative investigation which can reasonably be expected to grow out of the charge that was made."[24]  This more lenient pleading standard contemplates the fact that administrative charges of unlawful employment practices are regularly filled out by employees who do not have the benefit of counsel.[25]  Thus, precise pleading is not required for Title VII purposes.[26]

In *Mitchell v. City and County of Denver*,[27] the Tenth Circuit, in an unpublished opinion, found that because the plaintiff's EEOC charge contained no factual allegations of treatment in manner or degree to allege a racially hostile work environment, his claim was dismissed for failure to exhaust administrative remedies.  The court found that to lay a factual foundation for a hostile work environment claim, the plaintiff must "allege facts indicating a workplace 'permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'"[28] It then determined that the factual allegations in the EEOC charge were insufficient to allege a hostile work environment.[29]  The plaintiff had checked the EEOC charge form boxes marked "race" and

---

[23]*Martinez v. Potter*, 347 F.3d 1208, 1210 (10th Cir. 2003).

[24]*Mitchell v. City & Cnty. of Denver*, 112 F. App'x 662, 667-68 (10th Cir. 2004) (unpub.) (citing *Deravin v. Kerik,* 335 F.3d 195, 200-01 (2d Cir. 2003)).

[25]*Id.*

[26]*Id.*

[27]112 F. App'x 662, 667 (10th Cir. 2004) (unpub.).

[28]*Id.* at 668 (quoting *Davis v. United States Postal Serv.*, 142 F.3d 1334, 1341 (10th Cir. 1998)).

[29]*Id.*

"retaliation." In the section provided for his statement of "Personal Harm," the plaintiff stated that his employer "fail[ed] to promote me . . . because of my race/African American . . . and in retaliation for engaging in protected activity." He further alleged in his EEOC charge "Discrimination Statement" that:

> (1) he had always been a "satisfactory to above-satisfactory" employee, (2) three Caucasian males with less seniority and experience had been promoted in the last six months, (3) throughout this period he had consistently complained to his superiors regarding what he perceived to be discriminatory treatment, (4) he had filed a previous charge of discrimination around 1986, (5) Funk allegedly stated, "this nigger [Mitchell] ain't going anywhere as long as he works for me," and (6) he remained employed "at a lesser step than he should be."[30]

The court found that these statements in the plaintiff's EEOC charge were not sufficient to allege a hostile work environment. The court concluded that the EEOC's investigation of his failure to promote claim could not reasonably be expected to lead to a hostile work environment/racial harassment claim.

In another unpublished opinion, *Anderson v. Clovis Municipal Schools*,[31] the Tenth Circuit addressed whether the plaintiff had administratively exhausted his claims of hostile work environment and constructive discharge. Unlike *Mitchell* above, it concluded that the plaintiff had sufficiently alleged these claims in his EEOC filing, in which the plaintiff stated: "Beginning in February 2005 and continuing on a continuous basis I have been subjected to adverse terms and conditions unlike my peers." The plaintiff had also checked the box on the EEOC form indicating that the alleged discrimination was based on his race. The *Anderson* court determined that the claims of hostile work environment and constructive discharge could "reasonably be expected to

---

[30]*Id.* at 667.

[31]265 F. App'x 699, 706 (10th Cir. 2008) (unpub.).

follow the charge of discrimination," and concluded that the plaintiff's charge was sufficient to exhaust his administrative remedies and thereby confer jurisdiction.

In a district court opinion, *Allen v. Magic Media, Inc.*,[32] the court held that although a plaintiff need not spell out each element of the claim in an EEOC charge, she must allege enough in the charge to put the defendant on notice of plaintiff's belief that she has been the victim of a hostile work environment.  In that case, the court found the plaintiff's closest assertion was that "[i]n June 2008, [she] was subjected to ridicule," and that this vague reference was to an unspecified event occurring on only one date, and did not suggest that whichever unnamed person ridiculed her did so on the basis of her age or sex, or did so severely or persistently, or occupied a supervisory or other position which could render the defendant liable.[33]

In the Pretrial Order, Plaintiff asserts three theories of recovery:  racial discrimination, racial harassment, and retaliation.[34]  In his administrative complaint filed with the Kansas Human Rights Commission, Plaintiff set forth the following facts in support of his charge of discrimination:

> A.    From March 2008, to at least April 2009, I was subjected to disparate treatment compared to similarly situated non-African American employees, to include but not limited to my work being more closely scrutinized, being given additional job duties, including the more difficult job duties, and being subjected to multiple involuntary relocations of my position. Therefore, in December 2008, I made a complaint to Human Resources regarding race discrimination. However, nothing was resolved.

---

[32]No. 09-4139-SAC, 2010 WL 4739748, at *9 (D. Kan. Nov. 16, 2010).

[33]*Id.*

[34]*See* Aug. 18, 2011 Pretrial Order ¶ 6 (ECF No. 15) The Pretrial Order supercedes all prior pleadings.

B.      On December 10, 2008,[35] I was subjected to a written reprimand due to allegedly not completing my work.

C.      On March 19, 2009, I was subjected to a second written reprimand due to allegedly not following directions. However, a similarly situated Caucasian employee was not reprimanded due to similar actions.

D.      On March 25, 2009, I was subjected to a negative monthly evaluation.

III.    I hereby charge University of Kansas/Facilities Operations and its Representatives with a violation of the Kansas Act Against Discrimination, in that I was subjected to disparate terms, conditions, and privileges of employment due to my race, African American, and subjected to multiple reprimands and a negative monthly evaluation as acts of retaliation for having openly opposed acts and practices forbidden by the Kansas Act Against Discrimination.[36]

To lay a factual foundation for a racially hostile work environment claim, Plaintiff must allege facts indicating the workplace is "permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment."[37] Plaintiff's KHRC administrative complaint contains no factual allegations of treatment in manner or degree sufficient to allege a racially hostile work environment. Plaintiff's allegations of his work being more closely scrutinized, being given additional job duties, including the more difficult job duties, and being subjected to multiple involuntary relocations do not rise to this level.  These factual allegations in the KHRC complaint, even when read most liberally and viewed collectively, are insufficient to have reasonably lead the KHRC into an investigation of a claim for racially hostile work environment.  They would not have put Defendant

---

[35]Although Plaintiff referenced December 10, 2008 in his KHRC complaint, Exhibit A to Osburn Aff. (ECF No. 16-4) shows the correct date to be December 12, 2008.

[36]KHRC Compl., Ex. A to Compl. (ECF No. 1-1).

[37]*Davis,* 142 F.3d at 1341.

on notice that Plaintiff was alleging a hostile work environment claim, and would not reasonably lead the KHRC to conduct an investigation of such a claim. Consequently, Plaintiff's Title VII hostile work environment claim (titled "racial harassment" in the Pretrial Order) is dismissed for failure to exhaust administrative remedies. As a result, the Court considers only his Title VII racial discrimination and retaliation claims.

## IV.  Title VII Race Discrimination Claim

### A.  Plaintiff Has Not Established That He Suffered an Adverse Employment Action Sufficient to State a Claim for Title VII Race Discrimination

Defendant next contends that Plaintiff cannot establish an adverse employment action sufficient to state a claim for race discrimination. It argues that none of Plaintiff's claimed discriminatory actions by his supervisor adversely impacted the terms and conditions of his employment. He was not suspended or demoted, nor was his employment terminated. Plaintiff did not lose any salary or benefits as a result of the three supervisory actions.

A plaintiff alleging racial discrimination in violation of Title VII may prove intentional discrimination either by direct evidence of discrimination, or indirect or circumstantial evidence of discrimination.[38] If a plaintiff offers no direct evidence of discrimination, as is the case here, the court applies the burden-shifting analysis articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green.*[39] Under this framework, the plaintiff bears the initial burden of establishing a prima facie case, then the burden shifts to the defendant to produce a legitimate, non-discriminatory reason for the employment action.[40] If the defendant meets its burden, then the plaintiff must demonstrate

---

[38]*Burns v. Board of Cnty. Com'rs of Jackson Cnty.*, 330 F.3d 1275, 1283 (10th Cir. 2003).

[39]411 U.S. 792, 802 (1973).

[40]*Id.*

that an issue of material fact exists as to whether defendant's proffered reason is merely pretextual.[41]

To establish a prima facie case of discrimination based on disparate treatment, Plaintiff must demonstrate that: (1) he is a member of a protected class, (2) he suffered an adverse employment action, and (3) similarly situated employees were treated differently.[42]   Plaintiff meets the first element because the parties have stipulated he is African American, which is a protected class.  As to the second element, Defendant argues that Plaintiff has not suffered an adverse employment action sufficient to state a claim for race discrimination.  According to Defendant, Plaintiff has identified three actions by his supervisor that he claims were discriminatory:  a December 12, 2008 reprimand, a March 19, 2009 reprimand, and March 25, 2009 negative progress report.  It argues that none of these claimed discriminatory actions adversely impacted the terms and conditions of Plaintiff's employment.  He was not suspended or demoted, nor was his employment terminated. Plaintiff did not lose any salary or benefits as a result of the three supervisory actions.

Plaintiff does not otherwise identify in the Pretrial Order or his briefing to the summary judgment motion what actions he claims are adverse employment actions.  Nor does he dispute that these were his adverse employment actions.  The Court will therefore limit its determination of whether Plaintiff has shown that he suffered an adverse employment action to the three incidents identified in the KHRC administrative complaint.  Those incidents are: the December 12, 2008 reprimand, the March 19, 2009 reprimand, and the March 25, 2009 negative progress report.

As part of his prima facie case, Plaintiff must demonstrate that he suffered from an adverse employment action.  In *Burlington Industries, Inc. v. Ellerth*, the Supreme Court held that "[a]

---

[41]*Id.*

[42]*Orr v. City of Albuquerque*, 417 F.3d 1144, 1149 (10th Cir. 2005).

tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."[43]  The Tenth Circuit liberally defines what constitutes an adverse employment action.[44]  As the Tenth Circuit has stated:

> Such actions are not simply limited to monetary losses in the form of wages or benefits. Instead, we take a case-by-case approach, examining the unique factors relevant to the situation at hand. Nevertheless, we will not consider a mere inconvenience or an alteration of job responsibilities to be an adverse employment action.[45]

A written warning, or reprimand, is an adverse employment action "only if it effects a significant change in the plaintiff's employment status,"[46] or if it "adversely affects the terms and conditions of the plaintiff's employment."[47]  For example, an action adversely affects the plaintiff's employment if it affects the likelihood that the plaintiff's employment will be terminated, undermines the plaintiff's current position, or affects the plaintiff's future employment opportunities.[48]

---

[43]*Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998).

[44]*See Sanchez v. Denver Pub. Schs.*, 164 F.3d 527, 532 (10th Cir. 1998).

[45]Id. (internal quotation marks and citations omitted).  This continues to be the standard applicable to adverse employment actions under the substantive discrimination provisions of Title VII.  *See Piercy v. Maketa*, 480 F.3d 1192, 1203 (10th Cir. 2007) ("[W]hile *Burlington Northern* modified our retaliation standards for adverse actions, it had no similar effect on our discrimination jurisprudence. Accordingly, we continue to examine claims of adverse action on the basis of race or sex discrimination on a case-by-case basis, "examining the unique factors relevant to the situation at hand.") (referring to *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, (2006)).

[46]*E.E.O.C. v. PVNF, L.L.C.*, 487 F.3d 790, 800 (10th Cir. 2007) (quoting *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1224 (10th Cir. 2006)).

[47]*Medina v. Income Support Div.*, 413 F.3d 1131, 1137 (10th Cir. 2005).

[48]*Id.*

In an unpublished 2008 decision, *DeWalt v. Meredith Corp.*,[49] the Tenth Circuit found that the plaintiff's verbal and written reprimands did not qualify as adverse employment actions because he failed to identify any tangible negative consequences for his employment status. The memoranda the plaintiff received did not mention discipline or suggest that disciplinary action might follow, and he had testified that he was not punished or docked pay as a result of any of the incidents.[50] Similarly, in *Anderson v. Clovis Municipal Schools*,[51] the Tenth Circuit concluded that the plaintiff's reprimand failed to rise to the level of an adverse employment action sufficient to make out a prima facie case of discrimination. The reprimand merely served as a warning that the plaintiff would face consequences if he did not improve his classroom management skills.[52] But it did not serve as a demotion, alter his pay, or change his responsibilities in any significant manner.[53]

In this case, the Court finds that Plaintiff has failed to establish that he suffered an adverse employment action when he received the December 12, 2008 reprimand, the March 19, 2009 reprimand, or the March 25, 2009 negative progress report. The December 12, 2008 reprimand, called "Note for File," was issued to due to Plaintiff's alleged failure to be a team player and follow instructions. It stated that: "If this continues to be a problem you will face further discipline." The second "Note for File" issued on March 19, 2009 also was due to Plaintiff allegedly not following directions. This Note stated that Plaintiff's conduct was unacceptable and if it continues to be a

---

[49]288 F. App'x 484, 494 (10th Cir. 2008) (unpub.).

[50]*Id.* at 493.

[51]265 F. App'x 699, 704-05 (10th Cir. 2008) (unpub.).

[52]*Id.* at 705.

[53]*Id.*

problem, "discipline could occur up to and including suspension or dismissal."[54]   The Court finds

that these two write-ups or reprimands did not result in a significant change in Plaintiff's

employment status.   They did not adversely affect any of the terms or conditions of Plaintiff's

employment.   Both reprimands warn of a future possibility of discipline, but neither impose any

discipline on Plaintiff.   As Plaintiff has not otherwise shown that the reprimands undermined his

position, or affected his future employment opportunities, the Court finds that they do not rise to the

level of an adverse employment action sufficient to make out a prima facie case of discrimination.

Like the two reprimands, the March 25, 2009 progress report given to Plaintiff also does not

constitute an adverse employment action.   Although noting issues with Plaintiff's attitude, failure

to following instructions, work speed, and attendance, the progress report noted that overall the areas

the Plaintiff cleaned were acceptable.   The progress report did not impose any discipline or result

in any changes to the terms or conditions of Plaintiff's employment.   The Court thus concludes that

neither the December 12, 2008 reprimand, the March 29, 2009 reprimand, nor the March 25, 2009

progress report constitutes an adverse employment action sufficient for Plaintiff to state a prima

facie claim for race discrimination.   Defendant's motion for summary judgment on this aspect of

Plaintiff's discrimination claim is therefore granted.

**B.   Plaintiff Has Not Established that Similarly Situated Employees Did Not Receive Written Counseling Sufficient to State a Prima Facie Claim for Title VII Race Discrimination**

Defendant also contends that Plaintiff cannot prove that similarly situated employees did not

receive written counseling or reprimands.   The third element of Plaintiff's claim for race

discrimination based upon disparate treatment requires that he prove he was treated differently than

---

[54]*Id.*

18

other similarly situated employees.  Defendant argues that Plaintiff has not identified any other individual employee who was similarly situated to him and was treated differently than he in terms of Ms. Osburn's issuance of written counseling notes.

A plaintiff wishing to prove discriminatory animus with evidence that his employer treated him differently from other employees bears the burden of showing that the comparison is legally relevant, i.e., that the employees were similarly situated.[55]  "Similarly situated employees are those who deal with the same supervisor and are subject to the same standards governing performance evaluation and discipline."[56]

Here, Plaintiff has not identified any other individual employee who was similarly situated to him and was treated differently.  Therefore, because Plaintiff has failed to set forth any specific facts showing that similarly situated employees were treated differently from him, he cannot establish the third element needed to state a prima facie case of discrimination based on disparate treatment.  Defendant's motion for summary judgment on this aspect of Plaintiff's race discrimination claim is therefore granted.

## V.     Retaliation Claim

### A.     Plaintiff Has Failed to Establish That He Engaged in Protected Activity Preceding the Claimed Retaliatory Actions Sufficient to State a Prima Facie Claim for Retaliation

Plaintiff's final claim is for Title VII retaliation.  In addition to banning discrimination, Title VII also prohibits an employer from retaliating against an employee "because he has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge,

---

[55]*Watts v. City of Norman*, 270 F.3d 1288, 1293 (10th Cir. 2001).

[56]*Aramburu v. Boeing Co.*, 112 F.3d 1398, 104 (10th Cir. 1997).

testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under" Title VII.[57]  Retaliation claims are also subject to the *McDonnell Douglas* burden-shifting framework.[58]  To establish a prima facie case of retaliation, a plaintiff must show that: (1) he engaged in protected opposition to discrimination, (2) a reasonable employee would have found the employer's subsequent action to be materially adverse, and (3) a causal connection exists between the protected activity and the employer's action.[59]

Defendant argues that Plaintiff's retaliation claim fails because he cannot prove he engaged in protected activity preceding the claimed retaliatory actions.  Defendant asserts that Plaintiff's claimed retaliatory actions, consisting of the December 12, 2008 and March 19, 2009 reprimands, and March 25, 2009 progress report, all were taken before Plaintiff delivered his written complaint of discrimination to Mr. Ramirez on April 23, 2009.  Defendant argues that Plaintiff's general and vague statement to Mr. Ramirez on December 29, 2008, that he believed he was being discriminated against based on his race, without any details or examples, was insufficient to constitute protected activity.

Although a plaintiff generally need not file a written complaint to qualify as protected opposing activity, verbal remarks and statements must sufficiently convey concerns about the unlawfulness of an employer's conduct.[60]  A plaintiff's alleged protected activity generally must

---

[57]42 U.S.C. § 2000e–3(a).

[58]*Meiners v. Univ. of Kan.*, 359 F.3d 1222, 1229 (10th Cir. 2004).

[59]*Semsroth v. City of Wichita,* 555 F.3d 1182, 1184 (10th Cir. 2009).

[60]*Malik v. Amini's Billiard & Bar Stools, Inc.*, 454 F. Supp. 2d 1106, 1117 (D. Kan. 2006).

convey the opposition to illegal discrimination to management and/or supervisory officials and not merely take the form of personal complaints or grievances.[61]

The district court in *Garcia-Paz v. Swift Textiles, Inc.* noted that "[w]hile some courts have indicated that vague references to unspecified discrimination are not protected, no clear rule has emerged as to the level of specificity required."[62]  The court recognized that employees often do not speak with the clarity or precision of lawyers.[63]  It also recognized employers' need for clarity, so that they "need not approach every employee's comment as a riddle, troubling over the possibility that it contains a veiled complaint of discrimination."[64]  According to the *Garcia-Paz* court, the relevant question is "whether the employee's communications to the employer sufficiently convey the employee's reasonable concerns that the employer has acted or is acting in an unlawful discriminatory manner."[65]  While no magic words are required, to qualify as protected opposition the employee must convey to the employer his concern that the employer has engaged in a practice made unlawful by Title VII. General complaints about company management and one's own negative performance evaluation will not suffice.[66]

Applying these parameters, the Court finds that Plaintiff's verbal statement to Mr. Ramirez during the December 29, 2008 interview did not sufficiently convey Plaintiff's concerns about the

---

[61]*Id.*

[62]*Garcia-Paz v. Swift Textiles, Inc.*, 873 F. Supp. 547, 560 (D. Kan. 1995).

[63]*Id.*

[64]*Id.*

[65]*Id.*

[66]*Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1203 (10th Cir. 2008).

possible unlawfulness of Defendant's conduct under Title VII.  As such, they did not constitute protected activity under Title VII.  In the December 29, 2008 interview, Plaintiff told Mr. Ramirez that he felt that he was being discriminated against based on his race.  Mr. Ramirez was conducting the interview in response to a complaint by one of Plaintiff's female coworkers that Plaintiff had sexually harassed her.  After Plaintiff stated that he felt he was being discriminated against based on his race, Mr. Ramirez questioned Plaintiff about specific examples.  Plaintiff did not provide specific dates or details regarding his general allegation of racial discrimination at that time. Plaintiff told Mr. Ramirez that his allegations were documented, but that he wanted to provide Mr. Ramirez with a typed complaint.  Mr. Ramirez responded that he would accept the complaint when Plaintiff was ready to provide specific examples.  Plaintiff provided a written statement of his allegations of discrimination to Mr. Ramirez on April 23, 2009.

The Court finds that the relevant date for purposes of establishing the date of Plaintiff's protected activity is April 23, 2009, the date Plaintiff provided a written statement of his allegations of discrimination to Mr. Ramirez.  His prior verbal statement that he felt that he was being discriminated against based on his race to Mr. Ramirez on December 29, 2008, was not sufficiently detailed enough to convey his reasonable concerns that his employer was acting in an unlawful discriminatory manner so as to constitute protected activity.

Based upon an April 23, 2009 date of protected activity, all of the alleged retaliatory actions – the December 12, 2008 and March 19, 2009 written reprimands, and March 25, 2009 negative progress report from Plaintiff's supervisor – occurred *before* Plaintiff engaged in protected opposition to discrimination.  The requisite causal connection for retaliation claims may be

established only if the protected preceded the claimed retaliation.[67] Moreover, his first alleged

retaliatory action, on December 12, 2008, occurred before Plaintiff had even told Mr. Ramirez that

he felt that he was being discriminated against on December 29, 2008.

Plaintiff asserts in his response, in the section titled "Statement of Undisputed Material

Facts," that he complained of discrimination on December 18, 2008, when he went to talk to Jane

Gunther, the Intake Secretary for the Facilities Operation Department.  Ms. Gunther advised him

to speak with Allen Humphrey.  Plaintiff then spoke with Mr. Humphrey and met with him about

his complaint of discrimination. Mr. Humphrey told Plaintiff that he would send Mr. Ramirez to

speak with him.  Plaintiff later states in his response that he spoke to Ms. Gunther on December 22,

---

[67]*See Burden v. Isonics Corp.*, No. 09-cv-01028-CMA-MJW, 2009 WL 3367071, at *6 (D. Colo. Oct. 15, 2009) ("Logic dictates that the defendant could not have been motivated to take an adverse action as a result of something that happened after the alleged adverse action was taken."); *Jackson v. Lyons Falls Pulp & Paper, Inc.,* 865 F. Supp. 87, 95 (N.D.N.Y. 1994) ("[P]laintiff was already terminated before he was asked to sign a separation agreement or filed his EEOC charge. The requisite causal connection for retaliation claims may be established only if the protected action preceded the claimed retaliation.").  *See also Straining v. AT & T Wireless Servs., Inc.*, 144 F. App'x 229, 232-33 (3d Cir. 2005) (impossible for the employer's termination of benefits to have been caused in any way by the plaintiff's complaint because complaint had not yet been filed when the termination of benefits occurred); *Glanzman v. Metro. Mgmt. Corp.*, 391 F.3d 506, 516 (3d Cir. 2004) (retaliation claim failed because adverse employment action preceded the protected activity); *Dilbert v. Potter*, No. C 05-00087 MEJ, 2009 WL 1517734, at *6 (N.D. Cal. June 1, 2009) ("[B]ecause the alleged adverse employment action . . . *preceded* Plaintiff's proffered protected activity . . ., the adverse action cannot serve as a basis for retaliation for engaging in the protected activity.") (emphasis in original); *Wilson v. New York City Hous. Auth.*, No. 05 Civ. 6538 DF, 2007 WL 1032262, *10 (S.D.N.Y. Apr. 2, 2007) (Plaintiff's "prima facie case of retaliation fails, however, because he cannot demonstrate the requisite 'causal connection' between the protected activity and his termination. Although plaintiff's burden in establishing a prima facie case of retaliation is 'a light one,' it still requires that 'the protected activity precede[ ] the adverse action in order to satisfy the causation requirement.'"); *Matya v. Dexter Corp.*, No. 97-CV-763C, 2006 WL 931870, *15 (W.D.N.Y. Apr. 11, 2006) ("The requisite causal connection for retaliation claims may be established only if the protected activity preceded the claimed retaliation."); *Bryant v. Brownlee,* 265 F. Supp. 2d 52, 70 (D.D.C. 2003) ( "Plaintiff's concession that the ostracism preceded plaintiff's protected activity is fatal to her retaliation claim as it undercuts proof of causation.").

2008.  Defendant disputes these claimed statements, arguing that Plaintiff fails to cite to the record or any evidence that may be considered under D. Kan. Rule 56.1(d).  Defendant is correct that Plaintiff has not provided any support for his statements that he complained of discrimination on December 18, 2008, or December 22, 2008.

Even if Plaintiff spoke with Ms. Gunther or Mr. Humphrey on either December 18, 2008, or December 22, 2008, Plaintiff still has not made a prima facie case of retaliation because he has not shown a causal connection between his protected opposition to discrimination and the claimed retaliatory reprimands and negative progress report.  He has shown nothing to indicate that a retaliatory motive played a part in the reprimands or negative progress reports.  To establish the requisite causal connection between his protected conduct and termination, Plaintiff must show that his employer was motivated to terminate his employment by a desire to retaliate for his protected activity.[68]  As a prerequisite to this showing, Plaintiff must first come forward with evidence from which a reasonable factfinder could conclude that those who took the retaliatory actions had knowledge of his protected activity.[69]  There is no evidence that his supervisor, Ms. Osburn, was aware or had knowledge of his verbal statement to Mr. Ramirez or anyone else that he felt he was being discriminated against based upon his race when she issued the March 19, 2009 written reprimands, and March 25, 2009 negative progress report.

The Court finds that Plaintiff engaged in protected opposition to discrimination on April 23, 2009, when he submitted the written statement of his complaint to Mr. Ramirez.  Because all three

---

[68]*See Wells v. Colo. Dep't of Transp.*, 325 F.3d 1205, 1218 (10th Cir. 2003) ("The causal-connection element of a prima facie retaliation claim requires the employee to show that the employer's motive for taking adverse action was its desire to retaliate for the protected activity.").

[69]*Montes v. Vail Clinic, Inc.*, 497 F.3d 1160, 1176 (10th Cir. 2007).

alleged adverse actions occurred before that date, Plaintiff cannot show a causal connection between his protected opposition to discrimination and the claimed retaliatory actions. The Court thus grants summary judgment in favor of Defendant on Plaintiff's retaliation claim.

## VI.   Audio Cassette Tapes Submitted by Plaintiff

Previously, in conjunction with the filing of his response to the summary judgment motion, Plaintiff filed a Motion to File a Cassette Tape as Evidence asking the Court to accept an audio cassette tape, allegedly containing statements from four to six witnesses, as evidence. On October 24, 2011, the Court granted the motion in part and deferred it in part.[70] The Court granted Plaintiff leave to conventionally file his cassette tape with the Clerk of the Court by November 14, 2011; provided, however, that he serve a copy of the cassette tape upon Defendant. The Court deferred ruling on whether it would consider the contents of the cassette tape as evidence in ruling on the motion for summary judgment until after Plaintiff filed the tape.

Plaintiff timely filed two audio cassette tapes on November 14, 2011. The Court has reviewed the contents of the tape and finds that one of the tapes contains primarily inaudible conversations between Plaintiff and unidentified individuals. The other tape contains statements by three witnesses, Marilyn Burns, Paul Jackson, and Morris Harding, in support of Plaintiff's claims that he was treated differently because of his race.

Under Federal Rule of Civil Procedure 56(c)(2), "a party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." In this case, Defendant objected to the tapes submitted by Plaintiff because they contain statements are not authenticated, are unsworn, and constitute inadmissible hearsay.

---

[70]Oct. 23, 2011 Order (ECF No. 23).

Federal Rule of Evidence 901(a) requires that all documents and materials to be submitted into evidence be authenticated, "by evidence sufficient to support a finding that the matter in question is what its proponent claims." To prove authenticity, the proponent must present evidence sufficient to support a finding that the recording is an accurate reproduction of the matter recorded.

Courts considering audio recorded conversations in resolving a motion for summary judgment require that the party offering the recordings provide a foundation or properly authenticate them. In *Spencer v. Berger*,[71] the court refused to consider audio recorded and transcribed conversations with third party witnesses in resolving the motion for summary judgment due to the lack of foundation. In *Asia Economic Institute v. Xcentric Ventures*, LLC,[72] the court found that tape recordings submitted by the defendants were not properly authenticated and were not admissible as evidence in support their motion for summary judgment.

Plaintiff has not offered any affidavit or other evidence to authenticate or lay a foundation for the audio cassette tape recordings. And there is no evidence that these recordings are what Plaintiff claims they are, namely, statements by witnesses that they observed supervisors giving black employees extra work in order to force them to quit. Although the speakers identify themselves on one of the tapes, Plaintiff has not offered any evidence or affidavit that the speakers on the tapes are who they say they are. The Court therefore finds that the statements on the audio cassette tape are not properly authenticated under Fed. R. Evid. 901(a). Consequently, the Court has not considered the statements on the cassette tapes in ruling on the motion for summary judgment.

---

[71]No. CV08-04-N-EJL, 2009 WL 1956673, at *4-5 (D. Idaho July 7, 2009).

[72]No. CV 10-1360 SVW (PJWx), 2010 WL 4977054, at *13 (C.D. Cal. July 19, 2010).

Even if Plaintiff properly authenticated the tapes under Fed. R. Evid. 901(b)(1) and the Court considered the audible statements contained on the tapes, this would not have changed the Court's ruling on the motion for summary judgment.  None of the witnesses' statements can cure Plaintiff's failure to administratively exhaust his racial harassment claim.  Nor do any of the taped statements establish the missing elements of his race discrimination and retaliation claims.  They do not show that the reprimands and progress report Plaintiff received from his supervisor were adverse employment actions.  The statements do not identify similarly situated employees who were treated differently than Plaintiff by his supervisor.  Finally, none of the taped statements show that Plaintiff's verbal statement to Mr. Ramirez constituted protected opposition to discrimination for purposes of his retaliation claim, or that a causal connection exists between Plaintiff's protected opposition to discrimination and the alleged retaliatory actions.  Therefore, even if the Court considered the taped statements submitted by Plaintiff, summary judgment still would be appropriate on all of Plaintiff's claims.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment (ECF No. 16) is granted.  Defendant is entitled to summary judgment on Plaintiff's claims for discrimination based upon race and retaliation under Title VII.

**IT IS FURTHER ORDERED** that Plaintiff's claim for hostile work environment (titled "racial harassment" in the Pretrial Order) is dismissed for lack of subject matter jurisdiction based on Plaintiff's failure to exhaust his administrative remedies.

Dated in Kansas City, Kansas on this 22nd day of November 2011.

s/ David J. Waxse
David J. Waxse
U.S. Magistrate Judge

cc:      All counsel and *pro se* parties